UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LIFSEYVIND REINIER VANHOUTEN,<br><br>     Plaintiff,<br><br>V.<br><br>KENTUCKY DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>     Defendants. | Civil Action No. 5:21-cv-153-KKC<br><br><br><br>**MEMORANDUM ORDER<br>AND OPINION** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

*Pro se* plaintiff Lifseyvind Reinier vanHouten, acting consistent with prior orders of the Court, has filed an amended complaint seeking relief under the First Amendment, Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). vanHouten's claims stem from his alleged inability to properly practice his Asatru/Odinist religion while incarcerated at the Lee Adjustment Center. [R. 11; R. 11-1.] The Court has granted vanHouten's request to proceed *in forma pauperis* [*see* R. 12], and his claims are now before the Court for a preliminary screening. *See* 28 U.S.C. §§ 1915(e)(2), 1915A. For the reasons that follow, vanHouten's complaint will be **DISMISSED**.

I

Lifseyvind Reinier vanHouten is an inmate at the Western Kentucky Correctional Complex in Fredonia, Kentucky. At the time this civil action was initiated, however, vanHouten was serving his state sentence at the Lee Adjustment Center in Beattyville, Kentucky. [*Compare* R. 1 *with* R. 8.] Proceeding without counsel, vanHouten and twelve other inmates at the Lee Adjustment Center initially filed a joint complaint in this Court alleging various violations of their right to

religious freedom. [R. 1.] However, the attempted class action was deficient in a number of ways. [*See* R. 6.] In response to the Court's prior order, Plaintiff vanHouten has filed an amended complaint and supplemental documentation indicating he now wishes to proceed in this matter alone. [R. 11; R. 11-1.] vanHouten also moved for, and was granted, pauper status. [R. 8.]

vanHouten's amended complaint sets forth a number of claims all related to his ability (or alleged lack thereof) to practice his Asatru/Odinist faith while at the Lee Adjustment Center. First, vanHouten contends the Defendants failed to provide him with necessary ceremonial religious meals—specifically, with certain types of meat such as pork, beef, and rabbit that must be eaten on designated Odinist feast days. [R. 11 at 3; R. 11-1 at 7-9.] Next, vanHouten claims the Defendants failed to provide him with personal religious items to which he is entitled, such as a small rabbit pelt, a personal oath ring, a wooden rune set, a small wooden bowl, and a personal mead horn. [R. 11 at 5.] Also, vanHouten claims his Fourteenth Amendment rights under the Equal Protection Clause were violated when the Lee Adjustment Center's institutional records facility failed to change his racial identifier from "White" or "Caucasian" to "Germanic American." [*Id.;* R. 11-1 at 3.] According to vanHouten, this subjects him to racial discrimination. [R. 11-1 at 14-15.]

vanHouten names the following individuals or entities as Defendants to his claims: the Kentucky Department of Corrections ("KDOC"), the Lee Adjustment Center (named as "Core Civic"), KDOC Commissioner Cookie Crews, KDOC Director of Adult Institutions Janet Conover, KDOC Religious Program Administrator Alicia Bloyd, and Lee Adjustment Center Warden Daniel Akers. [R. 11 at 2-3, 12.] Commissioner Crews, Director Conover, and Administrator Bloyd are sued in both their individual and official capacities, while Warden Akers is named in his official capacity only. [*Id.*]

Finally, the amended complaint seeks various forms of relief. vanHouten seeks money damages from Defendants Crews, Conover, Bloyd, and Akers for each of the Odinist ritual feasts which he has not been allowed to adequately practice given the lack of requested food and other religious items. [*Id.* at 14.] He seeks money damages from Defendants Crews and Akers for the alleged racial discrimination he has suffered from the use of the terms "White" and/or "Caucasian" on his paperwork, as well as punitive damages, fees, and costs. [*Id.*] And vanHouten also requests various forms of declaratory relief related to the provision of ceremonial meals, the provision of personal religious items, and the racial identifier classification used for Odinists. [*Id.* at 5.]

vanHouten's claims are now before the Court for a preliminary screening. Pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court shall dismiss any portion of vanHouten's amended complaint that is frivolous, malicious, or that fails to state a claim upon which relief may be granted.

## II

Upon review, vanHouten's various claims fail to survive the Court's screening under the Prison Litigation Reform Act for a variety of procedural reasons. First, vanHouten may not collect money damages from any of the Defendants in their official capacities. The Eleventh Amendment specifically prohibits federal courts from exercising subject-matter jurisdiction over a suit for money damages brought directly against a state, its agencies, and state officials sued in their official capacities. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687-88 (1993); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Cady v. Arenac Co.*, 574 F.3d 334, 342 (6th Cir. 2009). Additionally, states, state agencies, and state officials sued in their official capacities for money damages are not considered "persons" within the meaning of 42 U.S.C. § 1983. *See, e.g., Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The Court,

3

therefore, will dismiss vanHouten's claims for money damages against Defendants Crews, Conover, Bloyd, and Akers in their official capacities. [*See* R. 11 at 14.]

The Court must also dismiss vanHouten's claims for money damages against Defendants Crews, Conover, and Bloyd in their individual capacities. vanHouten brings these claims under the First Amendment, Fourteenth Amendment, and RLUIPA. [*See id.* at 3-5, 14.] But RLUIPA does not allow a prisoner to collect money damages from Defendants sued in their individual capacities. *See Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014). And as for the First and Fourteenth Amendment claims, which are brought pursuant to 42 U.S.C. § 1983, the law is clear that liability for those claims must be based on more than a theory of *respondeat superior*. vanHouten does not allege that Crews, Conover, and/or Bloyd personally deprived him of the requested meals, religious items, and racial classification. Instead, he takes issue with the fact that they denied his grievances. [R. 11 at 13.]

According to the Sixth Circuit Court of Appeals, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Furthermore, "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). Without more specific allegations that the named Defendants personally deprived vanHouten of his constitutional rights, his damages claims against those Defendants in their individual capacities must also be dismissed.

That leaves vanHouten's various claims for declaratory relief [*see* R. 11 at 5], which are impacted by vanHouten's recent facility transfer. vanHouten's filings make clear that the conduct

underlying all of his claims took place "specifically at the Lee Adjustment Center." [*Id.* at 4.] But vanHouten has now been transferred to the Western Kentucky Correctional Complex. [*Id.* at 2; *see also* R. 8.] While a claim for money damages may survive beyond an inmate plaintiff's transfer from one facility to another, an inmate's claim for declaratory or injunctive relief becomes moot when he or she is transferred away from the institution where the underlying complaint arose. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("However, to the extent [the plaintiff] seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that [allegedly violated his constitutional rights]").

Although vanHouten does mention the KDOC's policies and procedures in different places throughout his filings, it is clear from reading the amended complaint and supporting documents on the whole that all of the allegedly unconstitutional conduct took place in the first instance by Lee Adjustment Center officials. [*See* R. 11 at 2, 4; R. 11-1.] And there is nothing in the record that suggests vanHouten's ability to practice his Odinist faith continues to be hindered at his new facility, the Western Kentucky Correctional Complex. Accordingly, vanHouten's claims for declaratory relief will be denied as moot, and his amended complaint will be dismissed for failure to state a claim upon which relief may be granted. That said, if vanHouten does believe his religious freedoms continue to be abridged at the Western Kentucky Correctional Complex, this dismissal does not prohibit vanHouten from filing claims directed at the policies, procedures, and/or actions taken against him at that facility.

For these reasons, the Court hereby **ORDERS** as follows:

1.      vanHouten's claims for money damages against the Defendants in their individual and official capacities are **DISMISSED**;

5

2. vanHouten's claims for declaratory relief against the Defendants are **DENIED AS MOOT** in light of vanHouten's transfer away from the Lee Adjustment Center;

3. The amended complaint [R. 11] is **DISMISSED** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A;

4. Judgment will be entered contemporaneously herewith; and

5. This case is **CLOSED** and **STRICKEN** from the docket.

Dated January 25, 2022.

*[signature]*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY